IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRADLEY F.[1], | ) |
| | ) |
|          **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 21-cv-524-SMY |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|          **Defendant.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Bradley F. seeks judicial review of the final agency decision denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability insurance benefits in 2015 (Tr. 1207). After this Court remanded and reversed the first ALJ decision, Plaintiff testified at another hearing in the presence of counsel in 2021 (Tr. 938). On remand, the ALJ issued a new decision, finding that through the date last insured, Plaintiff remained capable of performing other work that existed in significant numbers in the national economy (Tr. 911-29). That decision is the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(d). Plaintiff appealed directly to this Court, which has jurisdiction pursuant to 42 U.S.C. § 405(g).

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

## Issues Raised by Plaintiff

Plaintiff raises the following issues for judicial review:

1. The ALJ erred in assuming the VE's opinions were supported by Department of Labor data.

2. The ALJ erred in finding an equal distribution method could provide substantial evidence.

3. The ALJ erred in relying on the ALJ's assumptions about what the VE's testimony would have been if the VE had been required to correct the testimony.

4. The ALJ erred in failing to review the VE's testimony for reliability, supportability, and constancy with publicly available sources.

## Legal Standard

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant

is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**Decision of the ALJ**

The ALJ followed the five-step analytical framework. First, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period of his alleged onset date through the date on which he was last insured (Tr. 911). The ALJ found that Plaintiff had severe impairments, including coronary artery disease/ischemic heart disease, obesity, neurocognitive

disorder/organic brain syndrome, depression, and anxiety (Tr. 911, 912). The ALJ found the following regarding Plaintiff's residual functional capacity ("RFC"):

> [The Claimant can] perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds. The claimant can maintain the attention required to perform simple, routine, repetitive tasks and make simple, work-related decisions. He can adapt to few, if any workplace changes that are predictable and introduced gradually. The claimant can perform work that is not at a fast pace such as on an assembly line but can stay on task and meet reasonable production requirements in an environment that allows a flexible and goal-oriented pace. He can have no contact with the public.

(Tr. 915). Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was unable to perform any past relevant work (Tr. 927, 928) but was able to do other jobs that exist in significant numbers in the national economy, including the jobs of cleaner/housekeeper, small products assembler, and hand cleaner. *Id*. Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id*.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. As Plaintiff appeals the ALJ's decision pertaining to the VE's testimony, the Court has provided only the relevant portions of the evidentiary record below.

### *Agency Forms*

Plaintiff was born in 1967 and was 47 years old on the alleged onset date of March 14, 2015 (Tr. 909). He was last insured on December 31, 2020. Through the date last insured, Plaintiff had the following severe impairments: obesity, coronary artery disease ("CAD"), ischemic heart disease, depression, neurocognitive disorder/organic brain syndrome, and anxiety (Tr. 911). Plaintiff worked as a commercial airline pilot from October 1999 until he stopped working in 2015 due to his conditions (Tr. 243-244).

*Evidentiary Hearing*

Plaintiff has had three evidentiary hearings: February 2018; September 2018; and February 2021 (Tr. 35, 46, 909) and was represented by an attorney at each hearing. *Id*. During the third hearing, Plaintiff testified that he has difficulty walking far before getting tired (Tr. 944-953). He can no longer balance sufficiently to ride his motorcycle. *Id*. Plaintiff rarely exercises anymore due to pain. *Id.* Since his heart attack, Plaintiff has not cooked or performed household tasks. *Id.* He can drive to a few places like Walmart and a nearby hardware store, but not more because of road rage and frustration. *Id*. He takes daily naps between 1 to 3 hours depending on the day. *Id.* He cannot work due to frustration, forgetfulness, poor concentration, and memory loss. *Id*. He avoids other people because he has difficulty with social interactions. *Id*. Plaintiff also struggles with staying focused and is unable to even watch television shows or movies. *Id.* He spends most days trying to keep his mind busy without getting frustrated. *Id.*

A vocational expert ("VE") testified at Plaintiff's February 2021 hearing (Tr. 938). The ALJ presented a hypothetical to the VE that reflected the ALJ's residual functional capacity assessment (Tr. 915, 956-58). The VE testified that the hypothetical individual could perform the jobs of cleaner/housekeeper, small products assembler, and hand cleaner (Tr. 958, 960-61). She estimated that at least 80,000 cleaner/housekeeper jobs, 30,000 small products assembler jobs, and 15,000 hand cleaner jobs existed in the national economy (Tr. 958). Regarding her job estimates, the VE testified that she starts with the Department of Labor statistics and then reduces those numbers based on "the specific criteria she is looking for" (Tr. 960). The VE also testified that she relied on her experience, including over 25 years of doing onsite job analysis and placement services and working in the current vocational literature and research (Tr. 961).

Following the hearing, Plaintiff's counsel submitted a letter objecting to the VE's method for estimating job numbers (Tr. 1269):

> Please note that 20 C.F.R. 404.935(b)(3) allows that new VE testimony given during a hearing may be addressed by the claimant in a post-hearing written statement, not subject to the 5-day rule. 81 Fed. Reg. 90987, 90991 (Dec. 16, 2016). In this case, I have reviewed the VE's hearing testimony and we object. The VE's opinions as to job incidence data lack a reliable methodology. There is no specific confirmable methodology described in the record, and no evidence that the VE's methods for obtaining job incidence data are reliable and well-accepted, or why that is so. The record is unacceptably vague, and this fails to satisfy the Commissioner's burden at step five.

(Tr. 1269). The ALJ overruled Plaintiff's objection in her March 2021 decision and found Plaintiff could perform other work that existed in the national economy (Tr. 928).

## Discussion

Plaintiff asserts that remand is necessary because the ALJ impermissibly predicated her findings on unreliable vocational expert testimony. Specifically, Plaintiff maintains that the ALJ relied on flawed VE testimony in finding him capable of performing jobs that were available in significant number in the national economy.

Where, as here, a plaintiff cannot perform his previous work, "the Social Security Administration bears the burden of showing that a significant number of other jobs are available to the claimant." *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020). ALJs often rely on the opinions of vocational experts for this step in the analysis. *Id*. VEs estimate the number of jobs that exist, whether vacant or filled, and without regard to the location of the work and a claimant's likelihood of being hired. *Id*.; *see also* Ch*avez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018). Before accepting a VE's estimate of available jobs, the ALJ must "ensure that the approximation is the product of a reliable method." *Id*. at 821 (quoting *Chavez*, 895 F.3d at 968). That is, the method used to estimate job numbers "must be supported with evidence sufficient to provide some

modicum of confidence in its reliability." *Id*. at 822 (quoting *Chavez*, 895 F.3d at 969). When estimating the number of jobs available to answer an ALJ's hypotheticals, a VE will often use one of two methods: (i) the equal distribution method, which involves finding the total number of jobs in an occupational group and dividing that number by the number of occupations in the group and (ii) the occupational density method, which considers the intersection of the broad category of available jobs and the particular industry in which the claimant would work. *See Alaura v. Colvin*, 797 F.3d 503, 508 (7th Cir. 2015).

Here, the VE testified that jobs in three categories existed in significant numbers for someone with Plaintiff's limitations: cleaner/housekeeper, small products assembler, and hand cleaner. After the VE provided her estimates in response to the ALJ's hypotheticals, the ALJ followed up by asking whether her testimony was consistent with the DOT, which is typically used as a basis for the equal distribution method of estimating available jobs. The VE responded that her testimony was consistent with the DOT. When asked to explain her methodology behind the job numbers, the VE stated that she started with Department of Labor statistics and then reduced those numbers "based on the specific criteria she was looking for." The VE further testified that the numbers provided were for a grouping of DOTs which were based on OES occupational survey groupings.

Plaintiff's attorney challenged the VE's methodology in a post-hearing statement submitted to the ALJ. In her decision, the ALJ overruled Plaintiff's Attorney's objections to the VE's methodology presented in a post-hearing statement:

> Logically, the claimant's representative argues that a lack of comprehensive information on the VE's methodology violates the claimant's rights of confrontation and cross-examination, limiting the ability to deconstruct the formula to show errors in the specific number of jobs provided. Even if this specific methodology were provided to the claimant, discovery of errors in the specific job numbers would not provide a basis for disturbing a finding that a significant number

> of jobs remain available. The claimant would need to show that the jobs available under the residual functional capacity are isolated and exist only in a very limited number and in very few locations. This finding could be supported by information in the sources used by the VE, but the formula for specific jobs is not at all likely to reveal information suggesting only isolated jobs. Thus, such information could make no substantive change in the outcome of this case. Therefore, I overrule the objection to the VE's testimony.

(Tr. 928-929).

In overruling the objection, the ALJ has failed to carry her burden. When a plaintiff challenges the job-number estimate, the ALJ must compel the VE to offer a "reasoned and principled explanation" of the methodology she used to produce the estimate. *Chavez*, 895 F.3d at 970. The ALJ bears the burden of determining the reliability of a VE's job-number estimates; accepting a VE's statements as was done in this case "effectively and impermissibly" shifts the burden from the agency to the plaintiff. *Id.* The ALJ must do more than ask questions; the ALJ must "hold the VE to account for the reliability" of their job-number estimates. And the VE's explanation must be sufficient to instill some confidence that the estimate was not "conjured out of whole cloth." *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022) ("Because the expert failed to set forth an understandable methodology, we cannot review her methodology, let alone confirm that it was reliable.").

Here, there was no attempt to elicit a reasoned explanation of the methodology used to produce the estimated numbers. Rather, the ALJ blindly accepted the VE's testimony and went a step further by stating, without authority, that even if the VE provided the requested methodology, there would still be sufficient number of jobs in the market to render Plaintiff not disabled. But an unreliable job-number estimate cannot be considered reliable merely because it is large. *Chavez*, 895 F.3d at 970. Because the Court is unable to discern how the VE reached the job numbers

provided, the ALJ's conclusion that there are significant numbers of jobs in the national economy for Plaintiff to perform is not based on substantial evidence. Remand is therefore necessary.

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff is disabled or that he should be awarded benefits. The Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

After careful review of the record, the Court finds that the ALJ committed errors of law. Therefore, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: September 26, 2022

_____
**STACI M. YANDLE**
**United States District Judge**